**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

|   |   |
|---|---|
| TONY ALLEN GONZALEZ, on behalf of himself and others similarly situated,   : : : | Civil Action No.: 0:20-cv-60046 <br><br> **COMPLAINT - - CLASS ACTION** |
| Plaintiff,   : : | |
| v.   : : | **JURY TRIAL DEMANDED** |
| NATIONAL CAR CURE LLC and SUNPATH LTD. CORP. OF DELAWARE,   : : : | |
| Defendants.   : : x | |

**Nature of the Action**

1. Tony Allen Gonzalez ("Plaintiff") brings this class action against National Car Cure LLC ("National") and SunPath Ltd. Corp. of Delaware ("SunPath") (collectively, "Defendants") under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

2. This case concerns autodialed and prerecorded solicitation calls, made for the purpose of attempting to sell extended car warranties, without consent and to telephone numbers on the national do-not-call registry.

3. Section 227(b)(1)(A)(iii) of the TCPA sets forth restrictions on the use of automated telephone equipment, and provides in pertinent part:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>
> (A)  to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—
>
> *****
>
> (iii)  to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier

1

service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States[.]

4. In addition, the TCPA provides protections from unwanted solicitation calls to those persons who register their telephone numbers with the federal government's do-not-call registry.

5. To that end, and upon information and good faith belief, National, on behalf of, for the benefit of, and at the direction of, SunPath, routinely violates the TCPA by using an automatic telephone dialing system ("ATDS") and an artificial or prerecorded voice in connection with solicitation calls to telephone numbers without prior express consent, and otherwise engages in mass calling campaigns for the purpose of attempting to sell extended car warranties without regard to whether the telephone numbers it calls are on the national do-not-call registry.

**Jurisdiction**

6. This Court has subject matter jurisdiction under 47 U.S.C. § 227(b)(3) and 28 U.S.C. § 1331.

7. Venue is proper before this Court under 28 U.S.C. § 1391(b), as Defendants transact business in this district and as a substantial part of the events giving rise to this action occurred in this district.

8. Specifically, National directed telephone calls to Plaintiff's cellular telephone number in this district on behalf of SunPath, and Plaintiff received prerecorded calls from National, on behalf of SunPath, in this district.

**Parties**

9. Plaintiff is a natural person who at all relevant times resided in Margate, Florida.

10. National is a limited liability company with a principal address in West Palm Beach, Florida.

11. SunPath is a corporation with a principal address in Braintree, Massachusetts.

12. SunPath sells vehicle service contracts, commonly referred to as extended warranties, that provide repair coverage once the manufacturer-provided coverage expires.

13. To that end, SunPath offers multiple extended warranty plans, including SunPath Complete Care, Secure Advantage, SunPath Horizon, and SunPath Mileage Plus.[1]

14. To market and sell its extended warranty plans, SunPath, in connection with agents and vendors such as National, conducts mass, unsolicited robocalling campaigns to target potential customers.

## Factual Allegations

15. Plaintiff is the subscriber to and customary user of his cellular telephone number (954) XXX-9458.

16. Plaintiff has had the same cellular telephone number for more than 10 years.

17. Plaintiff pays the monthly bill for his cellular telephone number.

18. Plaintiff registered his cellular telephone number with the national do-not-call registry in December 2018.

19. Starting in early November 2019, Plaintiff began receiving prerecorded calls to his cellular telephone number regarding the purchase of an extended car warranty.

20. When Plaintiff answered these calls, he was greeted with a prerecorded message referencing an extended car warranty and inviting Plaintiff to press a particular number on his telephone to speak with a live agent.

---

[1] http://gosunpath.com/ (last visited Jan. 6, 2020).

21. Plaintiff received between 10-20 calls in November 2019 attempting to sell him an extended car warranty, often receiving multiple calls each day.

22. On at least three occasions, Plaintiff answered the calls and pressed the corresponding number on his telephone to connect with a live person.

23. On at least two occasions, Defendants' representatives hung up on Plaintiff when he asked questions to determine who was calling his cellular telephone number.

24. On another occasion on which Plaintiff answered a call from Defendants, and after having received a host of unsolicited calls, Plaintiff again pressed the button on his telephone to speak with a live representative.

25. Defendants' representative did not appear to have any information regarding Plaintiff, such as his name, address, or the make and model of his car.

26. In response to Defendants' questions, Plaintiff provided Defendants with his contact information and information regarding his motor vehicle, and—to determine who was calling him—agreed to purchase an extended warranty.

27. Defendants' calls were not only harassing, annoying, and illegal, but they put legitimate companies who comply with the TCPA at a competitive disadvantage.

28. After agreeing to purchase an extended warranty, National's calls to Plaintiff's cellular telephone number stopped.

29. Plaintiff subsequently received a letter in the mail from National congratulating him on the purchase of his extended warranty.

30. National's letter contained the electronic signature of Jasmine Whitfield, Protection Specialist.

31. Accompanying the letter from National was an extended warranty policy with SunPath.

32. SunPath's policy declarations page, like the letter from National, was signed by Jasmine Whitfield, as "Seller/Dealer/Vendor Representative."

33. Plaintiff did not provide his cellular telephone number to SunPath prior to receiving calls from National on SunPath's behalf.

34. Plaintiff did not provide his cellular telephone number to National prior to receiving calls from it.

35. Plaintiff did not request information about extended car warranties from National or SunPath prior to receiving their calls.

36. Upon information and good faith belief, Defendants' records will show each call they placed, or caused to be placed, to Plaintiff's cellular telephone number.

37. Upon information and good faith belief, Defendants' records will show each call they placed, or caused to be placed, to Plaintiff's cellular telephone number by using an ATDS or an artificial or prerecorded voice.

38. Upon information and good faith belief, and in light of the frequency, number, nature, and character of the calls at issue, including National's use of an artificial or prerecorded voice, National placed its calls to Plaintiff's cellular telephone number, on behalf of, for the benefit of, and at the direction of, SunPath, by using an ATDS.

39. Upon information and good faith belief, and in light of the frequency, number, nature, and character of the calls at issue, including National's use of an artificial or prerecorded voice, National placed its calls to Plaintiff's cellular telephone number, on behalf of, for the benefit of, and at the direction of, SunPath, by using "equipment which has the capacity—(1) to

5

store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers automatically (even if the system must be turned on or triggered by a person)." *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1053 (9th Cir. 2018).

40. Upon information and good faith belief, and in light of Defendants not having any information regarding Plaintiff when National made its calls to him, such as his name, address, or vehicle specifications, National placed its calls to Plaintiff's cellular telephone number, on behalf of, for the benefit of, and at the direction of, SunPath, by using a random or sequential number generator.

41. National placed its calls to Plaintiff's cellular telephone number, on behalf of, for the benefit of, and at the direction of, SunPath, for non-emergency purposes.

42. National placed its calls to Plaintiff's cellular telephone number, on behalf of, for the benefit of, and at the direction of, SunPath, voluntarily.

43. Upon information and good faith belief, National had knowledge that it was using an ATDS and an artificial or prerecorded voice to place calls to Plaintiff's cellular telephone number on behalf of, for the benefit of, and at the direction of, SunPath.

44. Upon information and good faith belief, SunPath had knowledge that National was using an ATDS and an artificial or prerecorded voice to place calls to Plaintiff's cellular telephone number on its behalf, for its benefit, and at its direction.

45. Upon information and good faith belief, National intended to use an ATDS and an artificial or prerecorded voice to place calls to Plaintiff's cellular telephone number.

46. Upon information and good faith belief, SunPath intended for National to use an ATDS and an artificial or prerecorded voice to place calls to Plaintiff's cellular telephone number.

47. Prior to receiving calls from National, Plaintiff did not give National prior express consent to place calls to his cellular telephone number by using an ATDS or an artificial or prerecorded voice.

48. Prior to receiving calls from National, Plaintiff did not give SunPath prior express consent to place calls to his cellular telephone number by using an ATDS or an artificial or prerecorded voice.

49. Plaintiff suffered actual harm as a result of the calls at issue in that he suffered an invasion of privacy, an intrusion into his life, and a private nuisance.

50. As well, National's calls unnecessarily tied up Plaintiff's cellular telephone line.

51. Upon information and good faith belief, Defendants, as a matter of pattern and practice, use an ATDS or an artificial or prerecorded voice to place calls to telephone numbers assigned to a cellular telephone service, absent prior express consent.

52. Upon information and good faith belief, Defendants, as a matter of pattern and practice, place or cause to be placed telemarketing and solicitation calls to telephone numbers that are on the national do-not-call registry, without prior express consent.

53. SunPath states on its website:

> You will never receive an unsolicited sales call from SunPath. Ever. SunPath is a vehicle service contract administrator and does not sell to consumers. As a member of the Vehicle Protection Association ("VPA") and Better Business Bureau ("BBB"), SunPath is committed to legal and ethical business practices. Our vehicle service contracts are offered exclusively through third party sellers, who share our commitment to treating consumers with dignity and respect.[2]

---

[2] http://gosunpath.com/# (last visited Jan. 6, 2020)

7

54. However, National's unsolicited telemarketing calls directly led to Plaintiff obtaining an extended warranty administered by SunPath.

55. In addition, SunPath directly benefits financially from calls made by National (and others) on its behalf.

56. Upon information and good faith belief, SunPath contracts with and has control over National's calls as they relate to the sale of extended warranty plans offered by SunPath.

57. Multiple consumers have complained online to the Better Business Bureau in the past few months about SunPath's illegal robocalling practices.

58. For example, on November 20, 2019, a consumer wrote:

I have been getting repeated calls from SunPath ltd in regard to extending my vehicle warranty. It starts with a robocall asking to press 3 to continue or 7 to be placed on a "Do not contact list". When continuing there is a second robocall saying to press 4 to be placed on the do not call list or another number to continue. I have attempted repeatedly to be added to the "do not call" under both messages but clearly I am not added. I have continued with the calls reaching a human and when I asked to be placed on the "Do Not Call" list I was verbally insulted and abused. My number is listed on the National Do Not Call list, they are not just using one robocall but two, and they are attempting to hide their identity by spoofing their phone number using VOIP. Clearly criminals![3]

59. As another example, on November 13, 2019, a consumer wrote:

I have been called numerous times and have asked each time to stop calling me. This last time I got the name and company who was calling (******* ******* ****, Los Angeles, CA I was told). She asked me for info on my car. I gave her completely false info. She then transferred me to someone else. Oddly enough same name (Shawn). I asked him where he was calling from and he told me Sunpath. When I pressed him further for info, he hung up. Total scam![4]

60. On October 23, 2019, a different consumer wrote:

This is a company no stop calls me doing robo calls. I have received over 10 calls

---

[3] https://www.bbb.org/us/ma/braintree/profile/auto-warranty-plans/sunpath-ltd-0021-133715/customer-reviews (last visited Jan. 6, 2019).

[4] *Id*.

8

from them in the past week. I'm going to report them.[5]

61. And on October 1, 2019, a consumer wrote:

Sunpath Ltd has violated **** laws repeatedly and knowingly repeatedly. In addition they violate Federal & State Laws by Contacting Consumers via Spoofed Phone Numbers. They repeatedly contact Consumers with an Incredibly High Pressure Sales pitch using what they admit are "third party marketers" in order to sell their Used Vehicle Warranties. Then Sunpath,Ltd Claims no liability when called to the Carpet regarding their illegal marketing strategies, and repeated disrespect for and blatant disregard for Marketing Compliance Laws, and Consumers.[6]

## Class Action Allegations

62. Plaintiff brings this action under Federal Rule of Civil Procedure 23, and as a representative of the following classes:

**Robocall Class**: All persons throughout the United States (1) to whom National Car Cure LLC or SunPath Ltd. Corp. of Delaware placed, or caused to be placed, a call, (2) directed to a number assigned to a cellular telephone service, (3) by using an automatic telephone dialing system or an artificial or prerecorded voice, (4) within the four years preceding the date of this complaint through the date of class certification.

**Do Not Call Class**: All persons in the United States (1) to whom National Car Cure LLC or SunPath Ltd. Corp. of Delaware placed, or caused to be placed, more than one call within any 12-month period; (2) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days; (3) for the purpose of selling National Car Cure LLC or SunPath Ltd. Corp. of Delaware's products and services.

63. Excluded from the classes are Defendants, Defendants' officers and directors, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

64. The proposed classes are so numerous that, upon information and belief, joinder of all members is impracticable.

---

[5] *Id*.

[6] *Id*.

9

65. The exact number of members of the classes is unknown to Plaintiff at this time and can only be determined through appropriate discovery.

66. The proposed classes are ascertainable because they are defined by reference to objective criteria.

67. In addition, and upon information and good faith belief, the telephone numbers of all members of the classes can be identified in business records maintained by Defendants and third parties.

68. Plaintiff's claims are typical of the claims of the members of the classes because all of the class members' claims originate from the same conduct, practice and procedure on the part of Defendants, and Plaintiff possesses the same interests and has suffered the same injuries as each class member.

69. Like all members of the proposed Robocall Class, Plaintiff received autodialed and artificial or prerecorded voice calls from Defendants on his cellular telephone, without his consent, in violation of 47 U.S.C. § 227.

70. Like all members of the proposed Do Not Call Class, Plaintiff received multiple calls from Defendants on his cellular telephone more than 30 days after registering his cellular telephone number on the national do not call registry, without his consent, in violation of the TCPA.

71. Plaintiff will fairly and adequately protect the interests of the members of the classes and has retained counsel experienced and competent in class action litigation.

72. Plaintiff has no interests that are irrevocably contrary to or in conflict with the members of the classes that he seeks to represent.

73. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable.

74. Furthermore, as the damages suffered by individual members of the classes may be relatively small, the expense and burden of individual litigation make it impracticable for the members of the classes to individually redress the wrongs done to them.

75. There will be little difficulty in the management of this action as a class action.

76. Issues of law and fact common to the members of the classes predominate over any questions that may affect only individual members, in that Defendants have acted on grounds generally applicable to the classes.

77. Among the issues of law and fact common to the classes are:

   a) Defendants' violations of the TCPA;

   b) Defendants' use of an ATDS, as defined by the TCPA, to place calls to cellular telephone numbers;

   c) Defendants' use of an artificial or prerecorded voice in connection with calls to cellular telephone numbers;

   d) Defendants' practice of calling telephone numbers on the national do-not-call registry for solicitation purposes; and

   e) the availability of statutory damages, including treble damages.

78. Absent a class action, Defendants' violations of the law will be allowed to proceed without a full, fair, judicially supervised remedy.

## Count I
### Violation of 47 U.S.C. § 227(b)(1)(A)(iii)
### On Behalf of Plaintiff and the Robocall Class

79. Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1-78.

80. National violated 47 U.S.C. § 227(b)(1)(A)(iii) by utilizing an ATDS to place calls to Plaintiff's cellular telephone number, without his consent.

81. National separately violated 47 U.S.C. § 227(b)(1)(A)(iii) by utilizing an artificial or prerecorded voice in connection with calls it placed to Plaintiff's cellular telephone number, without his consent.

82. National is directly liable for placing calls to Plaintiff's cellular telephone number and the cellular telephone numbers of proposed Robocall Class members.

83. National placed calls to Plaintiff's cellular telephone number and the cellular telephone numbers of proposed Robocall Class members as an agent of SunPath.

84. SunPath is liable for calls that National placed to Plaintiff's cellular telephone number and the cellular telephone numbers of proposed Robocall Class members on its behalf.

85. SunPath, as National's principal, is vicariously liable for National's conduct, because SunPath directed National to place calls to Plaintiff's cellular telephone number and the cellular telephone numbers of proposed Robocall Class members.

86. SunPath, as National's principal, is vicariously liable for National's conduct, because SunPath authorized National to place calls to Plaintiff's cellular telephone number and the cellular telephone numbers of proposed Robocall Class members.

87. SunPath, as National's principal, is vicariously liable for National's conduct, because SunPath ratified National's placement of calls to Plaintiff's cellular telephone number

12

and the cellular telephone numbers of proposed Robocall Class members by accepting the benefits of National's conduct.

88. As a result of Defendants' violations of 47 U.S.C. § 227(b)(1)(A)(iii), Plaintiff and the members of the Robocall Class are entitled to damages in an amount to be proven at trial.

**Count II**
**Violation of 47 U.S.C. § 227**
**On Behalf of Plaintiff and the Robocall Class**

89. Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1-78.

90. The TCPA at 47 U.S.C. §§ 227(c)(1)-(2) instructs the Federal Communications Commission ("FCC") to implement rules concerning the need to protect "residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object," and to "prescribe regulations to implement methods and procedures for protecting the privacy rights described in such paragraph in an efficient, effective, and economic manner and without the imposition of any additional charge to telephone subscribers."

91. Among these regulations implemented by the FCC, 47 C.F.R. § 64.1200(a)(2) states, with respect to advertisement and telemarketing calls—like National's solicitation calls to Plaintiff—that "[n]o person or entity may . . . [i]nitiate or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii) of this section, other than a call made with the prior express written consent of the called party . . . ."

92. The regulations at § 64.1200(f)(8) defines "prior express written consent" as "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller

13

to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered."

93. That TCPA at § 227(c)(5) states that "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may . . . bring in an appropriate court of that State— (A) an action based on a violation of the regulations prescribed under this subsection to enjoin such violation, (B) an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or (C) both such actions."

94. National violated 47 C.F.R. § 64.1200(a)(2) and, in turn, 47 U.S.C. § 227(c)(5), by utilizing an ATDS and an artificial or prerecorded voice to place calls containing a prerecorded advertising and marketing message to Plaintiff's cellular telephone number without prior express written consent.

95. National is directly liable for placing advertising and marketing calls to Plaintiff's cellular telephone number and the cellular telephone numbers of proposed Robocall Class members.

96. National placed advertising and marketing calls to Plaintiff's cellular telephone number and the cellular telephone numbers of proposed Robocall Class members as an agent of SunPath.

97. SunPath is liable for calls that National placed to Plaintiff's cellular telephone number and the cellular telephone numbers of proposed Robocall Class members on its behalf.

98. SunPath, as National's principal, is vicariously liable for National's conduct, because SunPath directed National to place calls to Plaintiff's cellular telephone number and the cellular telephone numbers of proposed Robocall Class members.

99. SunPath, as National's principal, is vicariously liable for National's conduct, because SunPath authorized National to place calls to Plaintiff's cellular telephone number and the cellular telephone numbers of proposed Robocall Class members.

100. SunPath, as National's principal, is vicariously liable for National's conduct, because SunPath ratified National's placement of calls to Plaintiff's cellular telephone number and the cellular telephone numbers of proposed Robocall Class members by accepting the benefits of National's conduct.

101. As a result of the violations by National and SunPath of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(a)(2), Plaintiff, and the members of Robocall Class, are entitled to damages in an amount to be proven at trial.

**Count III**
**Violation of 47 U.S.C. § 227**
**On Behalf of Plaintiff and the Do Not Call Class**

102. Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1-78.

103. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

104. Section § 64.1200(e) provides that §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

105. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

106. National violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Class members who registered their respective telephone numbers on the national do-not-call registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

107. National violated 47 U.S.C. § 227(c)(5) because Plaintiff and members of the Do Not Call Class received more than one telephone call in a 12-month period made by or on behalf of National in violation of 47 C.F.R. § 64.1200.

108. National is directly liable for placing advertising and marketing calls to Plaintiff's cellular telephone number and the cellular telephone numbers of proposed Robocall Class members.

109. National placed advertising and marketing calls to Plaintiff's cellular telephone number and the cellular telephone numbers of proposed Do Not Call Class members as an agent of SunPath.

110. SunPath is liable for calls that National placed to Plaintiff's cellular telephone number and the cellular telephone numbers of proposed Do Not Call Class members on its behalf.

111. SunPath, as National's principal, is vicariously liable for National's conduct, because SunPath directed National to place calls to Plaintiff's cellular telephone number and the cellular telephone numbers of proposed Do Not Call Class members.

112. SunPath, as National's principal, is vicariously liable for National's conduct, because SunPath authorized National to place calls to Plaintiff's cellular telephone number and the cellular telephone numbers of proposed Do Not Call Class members.

113. SunPath, as National's principal, is vicariously liable for National's conduct, because SunPath ratified National's placement of calls to Plaintiff's cellular telephone number and the cellular telephone numbers of proposed Do Not Call Class members by accepting the benefits of National's conduct.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a) Determining that this action is a proper class action;

b) Designating Plaintiff as the class representative under Federal Rule of Civil Procedure 23;

c) Designating Plaintiff's counsel as class counsel under Federal Rule of Civil Procedure 23;

d) Adjudging that Defendants violated 47 U.S.C. § 227(b)(1)(a)(iii) and 47 U.S.C. § 227(c)(5);

e) Enjoining Defendants from continuing to place, or cause to be placed, calls to Plaintiff's cellular telephone number, and from continuing to place calls to the cellular telephone numbers of members of the proposed classes, without prior express written consent;

f) Awarding Plaintiff and the classes statutory damages under the TCPA;

g) Awarding Plaintiff and the classes treble damages under the TCPA;

h) Awarding Plaintiff and the classes reasonable attorneys' fees, costs, and expenses under Rule 23 of the Federal Rules of Civil Procedure;

i) Awarding Plaintiff and the members of the classes any pre-judgment and post-judgment interest as may be allowed under the law; and

j) Awarding such other and further relief as the Court may deem just and proper.

## TRIAL BY JURY

Plaintiff is entitled to and hereby demands a trial by jury.

DATED: January 9, 2020                       Respectfully submitted,

*/s/ Michael L. Greenwald*
Michael L. Greenwald (Fla. Bar No. 761761)
Jesse S. Johnson (Fla. Bar No. 69154)
Greenwald Davidson Radbil PLLC
7601 N. Federal Hwy., Suite A-230
Boca Raton, FL 33487
Tel: (561) 826-5477
mgreenwald@gdrlawfirm.com
jjohnson@gdrlawfirm.com

              Aaron D. Radbil (Fla. Bar No. 47117)
              Greenwald Davidson Radbil PLLC
              106 East Sixth Street, Suite 913
              Austin, Texas 78701
              Tel: (512) 322-3912
              aradbil@gdrlawfirm.com

              *Counsel for Plaintiff and the proposed classes*